UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY E. AKINS,<br><br>             Plaintiff,<br><br>v.<br><br>PENNY HEDGECOTH, an individual,<br>MATTHEW TORRES, an individual,<br>and DOES 3, 5-10,<br><br>             Defendants. | Case No.: 12cv576 BTM (WVG)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS IN PART AND DENYING IN PART** |

After partially surviving one sua sponte dismissal and three motions to dismiss, the Court granted Plaintiff, Rodney E. Akins leave to amend his single remaining claim based on Defendants' alleged violation of his civil rights under 42 U.S.C. § 1983.  Plaintiff amended his complaint a fourth time, and Defendants have filed their fourth motion to dismiss (Doc. 61).  For the

reasons discussed below, Defendants' motion is GRANTED in part, and DENIED in part.

**I. Background**

Plaintiff continues his suit against the two remaining Defendants, Penny Hedgecoth and Matthew Torres, in their individual capacities as, respectively, a Mail Room Supervisor and a Campus Security Officer at San Diego Community College ("College"). The background facts of this case are well documented in the Court's May 29, 2014, Order Granting Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint ("TAC") (Doc. 58). The May 29, 2014 Order granted Plaintiff leave to amend only his § 1983 claim and instructed that Plaintiff must: (1) clearly articulate which "rights, privileges, or immunities secured by the Constitution and laws," Defendants' conduct violated under 42 U.S.C. § 1983, and; (2) support any civil rights claim with specific facts showing that he plausibly suffered discrimination on the basis of age, race or in retaliation for filing previous complaints. Plaintiff's account of the facts giving rise to the current action has changed only slightly from the TAC, and the pertinent changes are summarized below.

First, Plaintiff has added that "it was common knowledge on campus the plaintiff  [sic.] was being harassed and filing more than one lawsuit against the district and was basically ignored by school administrators" (Fourth

Amended Complaint ("FAC") ¶ 20). This is the reason the Plaintiff decided to wait to serve his court papers until after classes had ended for the semester (FAC ¶ 20). Second, Plaintiff added a description of the mail room where the allegedly discriminatory events took place; the mail room is located in the "Mesa College Reprographic Center," where students are able to drop off assignments in a basket "labeled student mail drop," which employees distribute into faculty members' individually labeled boxes not directly accessible to the students (FAC ¶ 23). Third, Plaintiff added that upon placing a stack of envelopes containing service of process papers in the basket, he asked the person behind the counter for a receipt, presuming that person to be a College employee (FAC ¶ 24).

Plaintiff was then told that he would have to go next door to the faculty and employee mail room for a receipt. He retrieved his envelopes from the basket and proceeded next door, initiating his encounter with Hedgecoth, who he claims attempted to deter him from completing service of process (FAC ¶¶ 28, 33). Plaintiff now states that after Hedgecoth told him that the faculty and employee side of the mail room he wished to access was not for students and that the mail boxes were closed, she asked Plaintiff whether he "was serving papers," to which he untruthfully responded, "no" (FAC ¶ 30). Plaintiff alleges

/ / /

that Hedgecoth then called the campus police only to prevent Plaintiff from leaving his envelopes in the mail room and completing service of process.

The only new allegations against Hedgecoth consist of unsupported legal conclusions, such as: Hedgecoth "has a fiduciary duty as a District employee to be courteous and helpful to students;" her actions were an "obvious blatant abuse of her authority and breaking the law;" the "in basket on Campus [sic.] was the same as depositing mail in a U.S. postal mailbox;" the College "employees in the reprographic center were bound by the same laws as postal employees," and; Plaintiff knew that Hedgecoth "was lying about the mail room being closed," because he saw people using it at the same time and knew that it was available to students late in the evening based on his previous experience as a College maintenance employee (FAC ¶¶ 30, 36, 39).  Plaintiff's allegations against Officer Torres remain unchanged from the TAC, and continue to state Torres unlawfully detained, falsely imprisoned, "manhandled" and handcuffed Plaintiff, causing him permanent injury (FAC ¶¶ 43-46, 51-52).

In addition to the above mentioned additions to Plaintiff's factual allegations, the FAC also raises five new "counts" under § 1983, grounded in alleged violations of Plaintiff's First, Fourth, Eighth, and Fourteenth Amendment rights under the United States Constitution.  Plaintiff's prayer for

1  relief remains unchanged and seeks general, compensatory, and punitive

2  damages in the amount of five million dollars, equitable relief, and

3  compensation for the cost of suit (FAC pp. 28-30).

4  **II. Legal Standard**

5  The F.R.C.P 12(b)(6) standard was previously articulated in the Court's

6  May 29, 2014 Order.  In summary, 12(b)(6) provides a defense against

7  complaints which "fail[] to state a claim upon which relief can be granted" and

8  a "Rule 12(b)(6) motion tests the legal sufficiency of a claim." Navarro v.

9  Block, 250 F.3d 729, 732 (9th Cir. 2001).  When reviewing a motion to

10 dismiss, the allegations of material fact in plaintiff's complaint are taken as

11 true and construed in the light most favorable to the plaintiff.  See Parks Sch.

12 of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  Although

13 detailed factual allegations are not required, factual allegations "must be

14 enough to raise a right to relief above the speculative level."  Bell Atlantic v.

15 Twombly, 550 U.S. 544, 555 (2007).

16 **III. Analysis**

17 Defendants argue that Plaintiff's amended § 1983 claims contained in

18 the FAC fail to state a claim because of insufficient factual allegations.

19 42 U.S.C. § 1983 provides in relevant part that:

20  / / /

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Defendants argue that Plaintiff's § 1983 civil rights action for alleged deprivation of Plaintiff's First, Fourth, Eighth, and Fourteenth Amendment rights is deficient because it makes "factual allegations [that] are once again speculative, implausible, and rely on legal conclusions, in addition to going beyond the leave provided by the court by expanding and adding new civil rights violations than previously asserted . . ." (Doc. 61-1, p. 4).  While the FAC adds five alleged "counts" of violations, all of them appear to be couched in the language of a civil rights claim arising under § 1983 and are therefore permitted by the Court's May 29, 2014 Order.  Nonetheless, having examined the differences between Plaintiff's TAC and FAC, and for the following reasons, the Court finds Plaintiff's factual allegations insufficient to state a § 1983 claim for civil rights violation under the First or the Eighth Amendments as well as the Due Process and Equal Protection clauses of the Fourteenth Amendment, but sufficient to state a claim of unlawful search and seizure and excessive force under the Fourth and Fourteenth Amendments

1  against Officer Torres.  Therefore, Defendants' Motion to Dismiss the FAC is
2  GRANTED in part and DENIED in part.
3       As a preliminary matter, contrary to Defendants' assertion, Plaintiff's
4  Memorandum in Support of his Opposition to Defendants' Motion to Dismiss
5  the FAC is timely in light of the Court's August 27, 2014 Order granting
6  Plaintiff's Motion for Extension of Time (Docs. 65, 67).  Plaintiff's
7  Memorandum in Support of his Opposition to Defendants' Motion to Dismiss
8  argues that Defendant Hedgecoth denied him the use of public
9  accommodations in violation of the Civil Rights Act of 1964 in retaliation for
10  Plaintiff's previously filed grievances and law suits, in order to prevent him
11  from serving process in the current action, and because she was motivated
12  by racial animus against Plaintiff.  However, Plaintiff fails to state any new
13  facts that could raise a non-speculative right to relief against Hedgecoth
14  under § 1983.  See Twombly, 550 U.S. at 555.
15       First, Plaintiff does not state any facts to support his conclusion that
16  Hedgecoth's actions were motivated by racial and age prejudice, or done in
17  retaliation for Plaintiff's past or current legal actions.  Plaintiff's version of the
18  facts gives no inkling of proof to support his assumption that Hedgecoth knew
19  that he previously filed claims against the Defendants.  In fact, Plaintiff
20  contradicts his own conclusion when he states that he lied to Hedgecoth

when he denied that he was "serving papers" in the mail room the day the events complained of took place (FAC ¶ 30).  Similarly, Plaintiff's statements calling Hedgecoth a "racist" and accusing her of acting with racial animus against Plaintiff are factually unsupported by any statement or action Plaintiff attributes to Hedgecoth (FAC ¶ 43).

### A. Count One

Plaintiff's First Amendment claim is based on the assertion that Hedgecoth deprived him of the right to communicate via mail when she removed the envelopes he had deposited in the student mail basket and handed them to a campus police officer to give back to Plaintiff, who was handcuffed at the time (FAC ¶ 55).  Plaintiff compares the basket in the campus mail room to a U.S. postal mailbox, and argues that the College mail room employees, including Hedgecoth, are "bound by the same laws as postal employees" (FAC ¶ 39).  Plaintiff neither cites what these "laws" are, nor explains how they were violated when Hedgecoth turned over his envelopes to a campus police officer after Plaintiff himself told that officer that he was going to go back to the mail room to retrieve them shortly after being stopped (FAC ¶ 42).  Additionally, Plaintiff cites no case law, and the Court is unaware of any, supporting Plaintiff's legal assertion that campus mail is governed by the same laws and/or regulations as the U.S. Postal Service.

Therefore, Plaintiff fails to state facts sufficient to support a § 1983 claim grounded in the First Amendment against both Defendants, and Count One of the FAC is DISMISSED.

### B. Count Three

Taking Plaintiff's factual assertions as true and reading them in a light most favorable to him, the Court also finds that Plaintiff's cruel and unusual punishment claim also fails to meet the 12(b)(6) pleading standard. Plaintiff fails to support his argument that his stop and detention by Officer Torres amounts to "cruel and unusual punishment" with case law or statute, and simply makes naked, conclusory, repetitive and legally insufficient accusations to the effect that "the-defendant-unlawfully-harmed-me." See Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009). Eighth Amendment scrutiny is applicable only after the state has secured a formal adjudication of guilt against a criminal defendant and is entirely inappropriate on the facts alleged in this case. See City of Revere v. Mass. General Hosp., 463 U.S. 239, 244 (1983). Therefore, Plaintiff fails to state facts sufficient to support a § 1983 claim grounded in the Eighth Amendment against both Defendants, and Count Three of the FAC is DISMISSED.

/ / /

/ / /

### C. Counts Four and Five

Plaintiff's attempts to raise Fourteenth Amendment Due Process and Equal Protection claims based on allegations that he was denied use of a public accommodation and stopped from serving process are also legally deficient. While Plaintiff cites seminal case law such as Board of Regents v. Roth, 408 U.S. 564, 570-71 (1972) and Mullins v. Oregon, 57 F.3rd 789, 795 (9th Cir. 1995) in support of his Due Process claim, and Brown v. Board of Educ. of Topeka, 347 U.S. 483 (1954) and Bolling v. Sharpe, 347 U.S. 497 (1954) in support of his Equal Protection claim, the Court finds each of these cases factually distinguishable from the matter at hand.

Additionally, assuming that the College mail room is a "public accommodation" as defined by the Civil Rights Act of 1964, as the Court explained above, Plaintiff has failed to plead facts sufficient to show that Hedgecoth deprived him of its use based on discrimination "on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a. Plaintiff's claim that he was stopped from completing service of process also fails because he voluntarily removed his envelopes from the student basket, then put them back in after he was denied a receipt, and finally told the Campus police officer that he wanted to retrieve them from the mail room, which request was granted when the officer returned the envelopes to Plaintiff (FAC ¶¶ 24-25,

37, 42, 47).  Even if Plaintiff was denied the opportunity to mail his envelopes from the student mail room, Plaintiff had alternate means of completing service of process since he is unrestricted in the use of the U.S. Postal Service and/or in-person service.  But cf. Morrison v. Hall, 261 F.3d 896, 906 (9th Cir. 2001) (in the prison context, restrictions on the delivery of mail have been recognized as a burden on a prisoner's exercise of his or her First Amendment rights).

      Therefore, Plaintiff fails to state facts sufficient to support a § 1983 claim grounded in the Due Process and Equal Protection clauses of the Fourteenth Amendment against both Defendants, and Counts Four and Five of the FAC are DISMISSED.

      D. Count Two

      Unlike Plaintiff's aforementioned claims, Plaintiff's remaining claims of illegal search, seizure and excessive force, broadly construed, state a claim on which relief can be granted, but only against Officer Torres.

      A police officer's right to make an on-the-street "stop" and an accompanying "frisk" is bounded by the protections afforded by the Fourth Amendment, and made applicable to the states by the Fourteenth Amendment.  Terry v. Ohio, 392 U.S. 1 (1968).   The Fourth Amendment provides that "the right of the people to be secure in their persons, houses,

papers, and effects, against unreasonable searches and seizures, shall not be violated. . ." U.S. Const. art. IV.  In testing the reasonableness of a search and seizure, the courts must balance the need to search or seize against the personal invasion which they entail, "[a]nd in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 22.

Plaintiff states facts sufficient to raise a Fourth Amendment unreasonable search and seizure claim.  Plaintiff maintains that Officer Torres stopped him a few minute after he exited the Campus mail room following Plaintiff's altercation with Hedgecoth, who threated to call the police on him and refused to accept his envelopes for mailing (FAC ¶¶ 35, 41).  Officer Torres told Plaintiff to put his things down, sit on a bench and talk with him, or otherwise be handcuffed (FAC ¶¶ 41-43).  When Plaintiff stated his intention to retrieve his envelopes and leave the Campus, Officer Torres allegedly grabbed and forcefully apprehended Plaintiff with another unnamed officer's assistance (FAC ¶¶ 44-45).  Plaintiff was handcuffed, searched, and questioned, and the officers told him that they were responding to a call that Plaintiff had disturbed the peace (FAC ¶ 46).  After speaking with Hedgecoth, the officers told Plaintiff that she was not pressing charges, removed the

1  handcuffs and released Plaintiff upon being "very apologetic and red faced
2  about the whole ordeal" (FAC ¶¶ 47-48).
3      These factual allegations, taken as true and construed in a light most
4  favorable to the plaintiff, suffice to raise a claim that Plaintiff was
5  unreasonably stopped and searched by Officer Torres.  However, Plaintiff's
6  allegation that Hedgecoth "solicit[ed] the help of Campus police under false
7  pretenses, to assist in her illegal attempt to deny Service of Process [sic.]" is
8  conclusory and insufficient to state a Fourth Amendment claim against
9  Hedgecoth, because Plaintiff does not allege facts showing that she caused
10 Plaintiff's unlawful detention (FAC ¶ 50).
11      Lastly, Plaintiff's Fourth Amendment claim of excessive force is also
12 deemed sufficient to survive Defendants' 12(b)(6) motion.  Claims of
13 excessive force arising before or during arrest are examined under the Fourth
14 Amendment's prohibition on unreasonable seizures.  Graham v. Connor, 490
15 U.S. 386, 394 (1989); see also Hammer v. Gross, 932 F.2d 842, 845 (9th Cir.
16 1991).  The reasonableness analysis requires balancing the "nature and
17 quality of the intrusion" on a person's liberty with the "countervailing
18 governmental interests at stake" to determine whether the use of force was
19 objectively reasonable in light of all the relevant circumstances.  Graham, 490
20 U.S. at 396; Hammer, 932 F.2d at 846.  Factors to be considered in the

reasonableness inquiry include: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

The FAC alleges that Officer Torres and an unnamed officer grabbed Plaintiff's arms, twisting them behind his back while pushing him toward the ground and telling him not to resist, and caused him severe pain, high blood pressure, and permanent injury to his back and shoulder (FAC ¶¶ 45, 49, 52). Plaintiff contents that as the officers handcuffed him, he repeatedly said: "I'm cool" and "I am not resisting" (FAC ¶ 45). In light of the Graham factors and based on Plaintiff's allegations, including: that the officers were responding to a minor infraction such as "disturbing the peace" and were not faced with an armed or resisting suspect, the Court finds the allegations sufficient to state a claim of excessive force against Officer Torres. Since Plaintiff does not allege that Hedgecoth caused the officers to use excessive force against him, this claim, as all the others, is dismissed against Hedgecoth (FAC ¶ 50).

/ / /

/ / /

/ / /

/ / /

### IV. Conclusion

Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.  Defendants' motion is **GRANTED** as to Counts One (First Amendment), Three (Cruel and Unusual Punishment under the Eighth Amendment), Four (Due Process Clause of the Fourteenth Amendment) and Five (Equal Protection Clause of the Fourteenth Amendment) and **DENIED** as to Count Two (Illegal Search, Seizure, and Excessive Force under the Fourth and Fourteenth Amendments) against Defendant Officer Torres.  Counts One, Three, Four, and Five are **DISMISSED** without further leave to amend and all counts against Defendant Hedgecoth are **DISMISSED** without leave to amend.  No motions for reconsideration shall be entertained.  Defendant Officer Torres shall file an answer to Count Two of the Plaintiff's FAC within 20 days of the entry of this order.

**IT IS SO ORDERED.**

Dated: January 2, 2015

BARRY TED MOSKOWITZ, Chief Judge
United States District Court